IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

MARVIN ELLIS WENDELL,

    Plaintiff,

v.                                               CIVIL ACTION NO. 2:19-cv-00301

ANDREW SAUL,[1]
Commissioner of Social Security,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff Marvin Ellis Wendell ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. By standing order entered on January 4, 2016, and filed in this case on April 22, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Memorandum in Support of Judgment on the Pleadings (ECF No. 7), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 8), and Claimant's Reply to Brief in Support of Defendant's Decision (ECF No. 9).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

to reverse the Commissioner's decision (ECF No. 7), **DENY** the Commissioner's request to affirm his decision (ECF No. 8), **REVERSE** the Commissioner's decision, and **REMAND** this matter to the Commissioner for an award of benefits.

## I.     BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 56 years old at the time of his alleged disability onset date and 59 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 148.)[2] He completed the eleventh grade. (*Id.* at 181.) Most recently, he worked as a mechanic at an automobile service center. (*Id.*) Claimant alleges that he became disabled on March 17, 2015, due to open heart surgery. (*Id.* at 180.)

Claimant protectively filed his application for benefits on May 12, 2015. (*Id.* at 145–49.) His claim was initially denied on December 1, 2015, and again upon reconsideration on February 5, 2016. (*Id.* at 104–08, 110–12.) Thereafter, on April 3, 2016, Claimant filed a written request for hearing. (*Id.* at 115–16.) An administrative hearing was held before an ALJ on November 16, 2017, in Charleston, West Virginia. (*Id.* at 29–67.) On February 16, 2018, the ALJ entered an unfavorable decision. (*Id.* at 8–28.) Claimant then sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied Claimant's request for review on February 22, 2019. (*Id.* at 1–6.) The ALJ's decision became the final decision of the Commissioner on that date.

Claimant timely brought the present action on April 19, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed an Answer (ECF No. 5) and a transcript of the administrative proceedings (ECF No. 6). Claimant subsequently filed his Memorandum in Support of Judgment on the Pleadings.

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 6.

(ECF No. 7.) In response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 8), and Claimant filed his Reply to Brief in Support of Defendant's Decision (ECF No. 9). As such, this matter is fully briefed and ready for resolution.

  B. *Relevant Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

  1. *Vocational Expert Hearing Testimony*

At the hearing, the ALJ heard testimony from a vocational expert ("VE"). (Tr. at 42–.) The ALJ first asked the VE if a hypothetical individual with Claimant's age, education, and work experience who "could lift, push, pull, carry 20 pounds occasionally and 10 pounds frequently"; sit, stand, or walk for six hours; "climb ramps and stairs and balance and stoop and kneel and crouch and crawl occasionally" but "[c]ould not climb ladders, ropes, or scaffolds" or be exposed to unprotected heights or moving mechanical parts or operate a motorized vehicle, although he could tolerate occasional exposure to pulmonary irritants, extreme cold, and extreme heat was capable of performing Claimant's past work. (*Id.* at 43–44.) The VE answered that the hypothetical individual would not be able to do so. (*Id.* at 44.)

However, she testified that such an individual would be able to "do work related to his past work at the light level." (*Id.*) She identified jobs as a tune up mechanic, service writer, and carburetor mechanic. (*Id.* at 44–45.) But the VE later stated that a hypothetical individual who could not be exposed to moving mechanical parts would be unable to work as a tune up or carburetor mechanic, but "the service writer would still be available." (*Id.* at 46.) The ALJ asked the VE if she was "finding transferable skills from [Claimant's] past work." (*Id.* at 45.) The VE replied in the affirmative and identified those skills as

troubleshooting; knowledge of motor systems; knowledge of "what tools to use"; the ability to inspect, examine, and test the mechanics of the work; knowledge of automobile parts; and analytical, problem solving, and critical thinking skills. (*Id.*) The ALJ asked if there would be "any other jobs that [those] skills would transfer to," and the VE replied that the hypothetical individual the ALJ described "could work as an auto parts counter person." (*Id.* at 46.) However, she stated that "that would be the only other one." (*Id.* at 47.)

The ALJ next asked the VE if there would be other work in the national economy for the hypothetical individual he identified. (*Id.*) The VE stated that work was available and identified the jobs of cashier, laundry sorter, and laundry folder. (*Id.*)

The ALJ then gave another hypothetical that was similar to the first, except that the second hypothetical individual was capable of medium exertion. (*Id.*) The ALJ asked whether that individual could perform Claimant's past work, and the VE answered that he could not. (*Id.*) The ALJ asked whether there would be transferable skills at the medium level, but the VE said that there would not be. (*Id.*) Lastly, the ALJ asked if the second hypothetical individual could perform other work in the national economy. (*Id.*) The VE identified the jobs of dry cleaning or coin operated laundry attendant and dietary aide. (*Id.* at 47–48.)

Moving on to a third hypothetical, the ALJ asked the VE to imagine a hypothetical individual with the same limitations as the first hypothetical individual but who was additionally limited to sitting for six hours but standing for four; needed to sit for five minutes after every two hours of standing; could walk for two hours but needed to sit for five minutes after every hour; would remain on task aside from normal breaks; could operate foot and hand controls frequently; could reach overhead occasionally; and could occasionally be exposed to weather but never to humidity, wetness, extreme cold, or extreme heat. (*Id.* at 49–50.) The ALJ asked the VE if such an individual was able to perform

4

Claimant's past work, and the VE confirmed that the individual could not. (*Id.* at 50.) Then, the ALJ asked the VE if any of the previously discussed transferable skills would provide work for the third hypothetical individual. (*Id.*) At first, the VE stated that "the auto parts counter person would remain," but she then corrected her testimony to clarify that an auto parts counterperson could not sit for four hours, so it was excluded for the third hypothetical individual. (*Id.*) The ALJ next asked if other jobs were available for that individual. (*Id.*) The VE eventually identified the positions of service writer and merchandise marker. (*Id.* at 52.)

      The ALJ then asked the VE if the service writer position would require skills beyond those "acquired from the previous employment" as a mechanic. (*Id.*) The VE answered that it would not. (*Id.* at 52–53.) Claimant's representative asked the VE if a mechanic would have experience pricing parts and labor and preparing estimates, and the VE explained that a self-employed mechanic would have those skills, but "[i]t depends on the mechanic." (*Id.* at 53.) Claimant's representative then asked Claimant if he performed estimates as part of his work as a mechanic, but Claimant said that he did not do "computer work" or "write nothing [sic] up." (*Id.* at 54.) Claimant clarified that he did not own the business that employed him. (*Id.*) The VE then stated that Claimant "does not have the skills to do service writing." (*Id.*) The ALJ again asked Claimant if he "did[] . . . any estimating," and Claimant answered that he did not. (*Id.*) The ALJ asked the VE if, notwithstanding any transferable skills, an individual with the RFC he explained could perform the service writer job. (*Id.* at 54–55.) The VE responded that the hypothetical individual "could carry out" the "physical requirements" of the job. (*Id.* at 55.)

      Claimant's representative next asked the VE if work as an auto parts counterperson required sales experience and customer service skills. (*Id.* at 57–58.) The VE opined, "I feel confident that if I had a mechanic, I could place them in a job where they could sell auto

5

parts, assuming they could meet the physical demands of the job." (*Id.* at 60.) Claimant's representative also asked the VE if "the involvement of working with people [as an auto parts counterperson] is at a higher level than what [it's] going to be . . . working in [sic] a mechanic." (*Id.* at 62.) The VE stated, "that's a reasonable assessment." (*Id.*) Claimant's representative continued to argue that Claimant did not have the sales experience to work as an auto parts counterperson and should be found disabled because he "doesn't have the transferability of skills to perform any other job." (*Id.* at 64–65.)

    C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

6

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must

consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden

8

shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 13.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) He found that Claimant's osteoarthritis, coronary artery disease status-post bypass surgery, angina (upon exertion), and obesity constituted "severe" impairments. (*Id.* at 14.) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15–17.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work . . . except that he is limited to standing for four hours and walking for two hours in an eight-hour workday," "requires a five-minute break after standing for two hours (covered by typical work breaks)," and "requires a five-minute break after walking for 30 minutes (50% covered by typical work breaks)." (*Id.* at 17.) He further determined that Claimant "will remain on task during position changes outside of normal work breaks." (*Id.*) In addition, the ALJ found that Claimant "is capable of frequent use of foot and hand controls bilaterally," "occasional overhead reaching bilaterally," and "occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs" but "is never capable of

9

climbing ladders, ropes, or scaffolds." (*Id.*) Finally, the ALJ determined that Claimant "is capable of occasional concentrated exposure to weather and pulmonary irritants" but "is never capable of concentrated exposure to mechanical parts, driving, humidity/wetness, or temperature extremes." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 22.) He noted that Claimant is "an individual of advanced age" with "a limited education." (*Id.* at 23.) He found that Claimant "has acquired work skills from past relevant work," which include "troubleshooting mechanical matters, using relevant tools, inspecting and examining automobiles, analyzing automobile problems, resolving and repairing automobiles, having knowledge of auto parts, and making estimates and writing up bills." (*Id.* at 23.) Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a VE to aid in his finding that Claimant is capable of working as an auto parts counterperson or a service writer. (*Id.* at 23.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from March 17, 2015, through the date of this decision." (*Id.* at 24.)

## II.  LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold

for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

III. ANALYSIS

Claimant argues that the ALJ found, contrary to the VE's testimony, that Claimant had transferable job skills that would allow him to work as an auto parts counterperson or a service writer. (ECF No. 7 at 5–9.) Claimant asks this Court to reverse the Commissioner's decision and award him benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner responds that Claimant has the RFC to perform the jobs the VE identified and that the VE testified that the skills Claimant acquired from his past work as an auto mechanic were transferable to work as an auto parts counterperson. (ECF No. 8 at 6–11.) Claimant replies that his functional abilities are immaterial to the issue of whether he possesses the skills necessary to perform the jobs the VE identified and that the VE "later clarified and retracted portions of [her] earlier testimony." (ECF No. 9 at 1–2.)

"When, as in this case, an ALJ determines that a claimant's RFC prevents the claimant from performing [his] past work, the ALJ reaches step five of the review process," and "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant is capable of doing other work that exists in significant supply in the national economy." *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019). Generally, to meet this burden, "the Commissioner calls a VE to testify to whether a hypothetical person with the same limitations as the claimant would be able to perform any of the jobs listed in the

11

[*Dictionary of Occupational Titles*]." *Id.* (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Where, as here, the claimant has a severe impairment or combination of impairments that precludes the performance of his skilled or semi-skilled past relevant work, the ALJ must make specific findings about the transferability of the skills the claimant acquired from his past relevant work to other work. *Johnson v. Colvin*, No. 2:14-cv-400-RMG, 2015 WL 3542714, at *5 (D.S.C. June 4, 2015) (report and recommendation of magistrate judge) (quoting SSR 82-41, 1982 WL 31389, at *1 (Jan. 1, 1982)). He may rely on the VE's testimony to do so. *Martin v. Comm'r*, No. SAG-11-cv-3015, 2012 WL 5511920, at *3 (D. Md. Nov. 13, 2012) (finding ALJ's decision supported by substantial evidence where "[t]he ALJ fully explained that he was relying upon the VE's testimony regarding the marked similarities between [the claimant's] past work and the job identified by the VE").

In this case, the ALJ at step five found that the skills Claimant acquired in his past work as a mechanic were transferable to work as an auto parts counterperson or a service writer. (Tr. at 23.) However, the VE testified, upon questioning from Claimant's representative, that Claimant "does not have the skills to do service writing" because his past work as a mechanic did not involve preparing estimates. (*Id.* at 54; *see id.* at 58.) Although Claimant testified that he did not have experience preparing estimates, the ALJ listed it as a transferable skill that Claimant had acquired through his past work. (*Id.* at 23, 54.) In listing "service writer" as a job Claimant could perform, the ALJ failed to explain why, despite the testimony to the contrary, Claimant could work as a service writer without experience preparing estimates—a skill the VE testified was necessary for the job. (*See id.* at 23–24, 52.) In fact, the ALJ purported to rely on the VE's testimony as evidence that Claimant can perform the job (*id.* at 23), but her testimony clearly indicates that he cannot (*id.* at 54, 58).

12

Similarly, the VE testified that a hypothetical individual who was "limited to standing for four hours" would not be capable of working as an auto parts counterperson because the VE could not "guarantee that they could sit for four hours." (*Id*. at 49–50; *see id*. at 58.) The ALJ's RFC assessment concluded that Claimant, like the hypothetical individual the ALJ asked the VE to imagine, "is limited to standing for four hours." (*Id*. at 17.)[3] However, despite this limitation, the ALJ found at step five that Claimant could work as an auto parts counterperson. (*Id*. at 23.) Again, the ALJ purported to rely on the VE's hearing testimony, but her testimony did not align with the ALJ's findings. (*Id*. at 23, 50, 58.)

The undersigned therefore **FINDS** that the ALJ's findings at step five are not supported by substantial evidence. In fact, because the ALJ relied exclusively on the VE's testimony, but that testimony stands for a proposition wholly opposite to the ALJ's findings, those findings are not supported by any evidence at all. *See Woodley v. Astrue*, 572 F. Supp. 2d 638, 650–51 (D.S.C. 2008) ("Based on the apparent conflict in the VE's testimony, which renders it unreliable, the Court finds that the Commissioner failed to satisfy his burden of providing evidence of a significant number of jobs in the national economy that the claimant can perform."). Further, the VE's testimony made clear that service writer and auto parts counterperson—neither of which Claimant can perform—were the only jobs to which Claimant's skills would transfer. (*See* Tr. at 46–47, 52.) The undersigned agrees with Claimant that under those circumstances, Medical–Vocational Rule 202.02 appears to suggest that a finding of "disabled" is appropriate. 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.2.[4]

---

[3] The Commissioner argues that "the record confirms that [Claimant] has the ability to stand and walk for six hours." (ECF No. 8 at 8–9.) However, the ALJ found that Claimant had the RFC to stand for only four hours and walk for only two hours. (Tr. at 17.)

[4] The undersigned recognizes that the Medical–Vocational Rules "are not to be treated as conclusive" when, as here, the claimant "has nonexertional limitations in addition to exertional limitations" and can perform less than the full range of light work. *Gordon v. Berryhill*, No. 2:17-cv-02280-MGL-MGB, 2019 WL 653966, at *10 (D.S.C. Jan. 28 2019) (citing 20 C.F.R. § 404.1569; *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)), *adopted by* 2019 WL 652073 (D.S.C. Feb. 14, 2019). However, the rules "can still provide a 'framework' to guide the ALJ in the decision making process." *Boland v. Astrue*,

At step five, the Commissioner bears the burden to establish that "there is at least one job . . . that [the claimant] can perform" given his physical and mental abilities and vocational qualifications. *Lopez v. Saul*, No. 1:18-cv-641, 2019 WL 6522848, at *4 (M.D.N.C. Dec. 4, 2019) (citing *Cole v. Colvin*, No. 1:13-cv-868, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014)). Here, the VE's testimony eliminates any question about whether there is other work available to which Claimant's skills would transfer, rendering it impossible for the Commissioner to meet his burden in this case. *See* 20 C.F.R. pt. 404, subpt. P, appx. 2, § 202.00(c) ("[F]or individuals of advanced age who can no longer perform vocationally relevant past work and . . . who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled."); *see id.* § 200.00(d) ("[W]hen the necessary judgments have been made as to each factor and it is found that no specific rule applies, the rules still provide guidance for decisionmaking, such as in cases involving combinations of impairments."). "When the record clearly establishes a plaintiff's entitlement to benefits, reversal for an award of benefits is appropriate." *Clauson v. Berryhill*, No. 2:17-cv-60-BO, 2019 WL 405338, at *2 (E.D.N.C. Jan. 31, 2019); *see Radford v. Colvin*, 734 F.3d 288, 295–96 (4th Cir. 2013) (holding that district court erroneously directed award of benefits where conflicting record evidence rendered entitlement to benefits unclear). Thus, the undersigned **FINDS** that remand of this matter for further proceedings is unnecessary.

IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision

---

No. 3:08-cv-798-HEH, 2009 WL 2431536, at *5 (E.D. Va. Aug. 7, 2009) (report and recommendation of magistrate judge) (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d)).

(ECF No. 7), **DENY** the Commissioner's request to affirm his decision (ECF No. 8), **REVERSE** the Commissioner's decision, and **REMAND** this matter to the Commissioner for an award of benefits.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: January 23, 2020

Dwane L. Tinsley
United States Magistrate Judge